KARL, Justice.
We have for review by petition for writ of certiorari Order No. 7736 of the Florida Public Service Commission.
On June 23, 1976, petitioner applied to the Public Service Commission for authority to increase rates for its water and sewer systems in Osceola County on an interim and permanent basis to produce $96,425 and $183,444 gross annual revenues for its water and sewer systems respectively. Finding, from a preliminary review of the financial schedules filed, that the company’s finances were in a critical condition requiring immediate rate relief, the Commission, by Order No. 7400 entered August 24, 1976, granted interim rate relief (to produce $95,-348 and $177,538 for water and sewer respectively), effective for service on and after September 1, 1976.
Petitioner, a private utility company, began providing service to the public in 1972 and is now servicing an entirely commercial area in Osceola County lying along U.S. 192 between the western edge of Disney World and U.S. 27 (nine large motels, one service station and a convenience store). Because of the 1973-74 economic downswing, the oil embargo and the financial collapse of one of its principals, petitioner suffered serious financial reverses and was unable to pay interest on its construction loan from mid-1972 until November of 1976. The unpaid interest as of the end of the test year 1975 amounted to approximately $195,000. The construction loan and land mortgage are in serious default, and foreclosure of the construction loan has been delayed pending conclusion of these proceedings. In their application for emergency rate increase, petitioner states that the requested gross revenues are designed to refinance the debt at interest rates of 10%, retire that debt, pay necessary expenses and provide a risk or contingency fund to assure financial integrity, continued operation and improvement of service.
Public hearing was held, and the Commission, by Order No. 7736 entered April 5, 1977, granted total gross operating revenues to the petitioner of $82,888 and $164,-434 for the water and sewer systems respectively and permitted petitioner to change its billing from quarterly to monthly. In Order No. 7736, the Commission determined that it must set rates in accordance with the prescriptions of Section 367.081, Florida Statutes (rate base/rate of return) and stated:
“The modified ‘cash flow’ approach used by the company (starting with cash needed to service debt and backing into rate of return) does not comply with these standards. The amount of debt the company seeks to service exceeds rate base. To require the customers to pro *405 vide interest coverage thereon is contrary to Section 367.081(2), Florida Statutes.”
The Commission went on to say:
“The rate base we find, which, as hereinafter noted, includes capital items required by a governmental agency to be provided within twenty-four (24) months (by July 18,1978), still does not equal the total amount of the debt and accumulated interest (Schedule B-l-(B-2) WS, Exhibit 6).
“In this respect it is suggested that the second mortgagee could better afford to forego the payments of principal and interest thereon, so long as the primary obligation is kept current. This, and the additional capital investments, will enhance the value of the security and thus enure to the benefit of the second mortgagee.
“It is to be noted the owners have minimal capital investment ($500) in this company. This, in part, is the cause of the problems of meeting debt requirements. If there was a reasonable equity paid into the company, cash flow provided by the return thereon could provide the source of funds to pay the excess interest expense and to amortize the debt principal. These cannot be provided through rates.
[[Image here]]
“We believe our findings and conclusions herein will provide adequate revenue to comply with Section 367.081, Florida Statutes, and that this will enable the utility and its owners to work out its financial problems. In reaching this conclusion, we note the company position has improved with the improving economy.”
The order further provided for the refunding of excess received under interim rates over that authorized by the final order.
Our careful consideration and analysis of the petition, the record, briefs and arguments of counsel sustain the view that the findings of the Commission are supported by competent substantial evidence and that, in entering its orders, respondent Commission met the essential requirements of law.
Accordingly, the petition for writ of cer-tiorari is denied.
It is so ordered.
ADKINS, Acting C. J., and BOYD, ENGLAND and HATCHETT, JJ., concur.